**UNITED STATES, Appellee,**

v.

**Specialist James L. WILLIAMS, 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, United States Army, Appellant.**

**ACMR 9202646.**

. U.S. Army Court of Military Review.

28 Jan. 1994.

---

For Appellant: Major Fran W. Walterhouse, JAGC, Captain David L. Thomas, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Captain Gregory T. Baldwin, JAGC (on brief).

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of one specification of larceny and twelve specifications of forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 923 (1988) [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence, which included a bad-conduct discharge, con-

1. The appellant pleaded guilty by exceptions and substitutions to wrongful appropriation, the lesser-included offense of the larceny specification, but was convicted of the greater offense.

2. This issue was previously the subject of a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus and a Motion for Stay of

finement for three years, total forfeitures, and reduction to Private E1.

Before this court the appellant contends, inter alia, that the military judge improperly denied a motion to admit favorable polygraph evidence.[2] The issue we must decide is whether Military Rule of Evidence 707 [hereinafter Mil.R.Evid.] is a constitutionally permissible restriction on a soldier's ability to present evidence on his behalf. We hold, as applied to the facts of this case, that it is not.

### I.

The appellant was a Chaplains' Fund Clerk who, along with the Fund Manager, was in charge of collecting and disbursing funds for the chaplaincy within V Corps. During the period 18 August 1991—18 February 1992, a total of eighteen unauthorized disbursements were made from the fund account. The appellant admitted to misappropriating three of these unauthorized disbursements in 1992, which he said that he intended to repay. He denied stealing the remainder.

In July 1992, the appellant consented to taking a Criminal Investigation Command (CID) administered polygraph test. The test centered on whether the appellant stole from the chaplains' fund between August and November of 1991. In the polygraph examiner's opinion, there was no deception indicated when the appellant responded "no" to questions pertaining to the tested issue. The charts created by the polygraph instrumentation were then sent to the CID's quality control center in Maryland, which opined that the test results were inconclusive.

In August 1992, upon request by the appellant, he was retested by the same CID polygrapher. A more detailed pretest interview was conducted in order to focus the appellant so that he would not be distracted, which could cause the test to be inconclusive. After this test, the examiner again opined that the appellant was indicating no deception

Proceedings Pendente Lite filed with this court, and a Writ Appeal Petition filed with the U.S. Court of Military Appeals, all of which were denied without prejudice to appellant's right to assert the same claims of error during the course of regular appellate review.

when he said that he did not steal money from the chaplains' fund between August and November 1991. Unlike the previous test, the examiner sent these polygraph charts to Heidelberg for review by his immediate supervisor, who was also an experienced CID polygrapher. The supervisor agreed with the findings and forwarded the charts to quality control in Maryland. This time, quality control opined that the test indicated no deception, and went on to say that the findings of the two examiners were "strong."

The appellant filed a motion at his court-martial to be allowed an opportunity to lay a foundation for the admission of the two exculpatory CID polygraph examinations. The military judge denied the motion, finding Mil. R.Evid. 707 to be a proper exercise of executive rule-making authority under Article 36, UCMJ, and violative of neither the Fifth nor Sixth Amendments of the Constitution. This ruling "impacted greatly" on the appellant's decision not to testify.

## II.

Military Rule of Evidence 707(a) established a categorical rule barring the admissibility of polygraph evidence at trials by courts-martial:

Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

This rule effectively removes any discretion from a military judge to weigh the legal and logical relevance of polygraph evidence.[3] It denies a proponent an opportunity to even attempt to lay a foundation for admitting polygraph evidence, regardless of whether it is reliable, relevant, helpful, and even if its probative value outweighs any extraneous factors.

The total ban on admissibility of polygraph evidence under Mil.R.Evid. 707 represents a dramatic shift from prior military precedent. In *United States v. Gipson,* 24 M.J. 246, 253

(C.M.A.1987), the Court of Military Appeals assessed the state of the polygraph technique in the following language:

[D]epending on the competence of the examiner, the suitability of the examinee, the nature of the particular testing process employed, and such other factors as may arise, the results of a particular examination may be as good as or better than a good deal of expert and lay evidence that is routinely and uncritically received in criminal trials. Further, it is not clear that such evidence invariably will be so collateral, confusing, time-consuming, prejudicial, etc., as to require exclusion.

The court clearly felt that polygraph evidence has evolved to the point where it can no longer be "rejected out of hand," and concluded that the admissibility determination could and should be made by the trial judge, with this caveat:

[W]e do not suggest that all polygraph evidence is admissible or that this particular evidence should have been admitted. Appellant still bears the burden of establishing the foundational predicates outlined above. Our holding here is only that appellant was entitled to attempt to lay that foundation.

Judge Cox, speaking for the court, outlined the comprehensive scheme for processing expert testimony envisioned under Mil.R.Evid. 401, 402, 403, and 702, and observed that "[t]he judge has considerable room to exercise 'judgment.'" This comprehensive scheme closely parallels the analytical approach to scientific evidence outlined by the Supreme Court six years later in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

In *United States v. Rodriguez,* 37 M.J. 448 (C.M.A.1993), Judge Wiss alluded to the dilemma which we now face in this case, notwithstanding the clear mandate of Mil. R.Evid. 707.[4] Judge Crawford, in a concurring opinion, took exception to the suggestion that either the UCMJ or the Constitution compels the admissibility of polygraph evidence, and illustrated how, in the absence of

---

3. See J. Canham, Jr., *Military Rule of Evidence 707: A Bright–Line Rule That Needs To Be Dimmed,* 140 Mil.L.Rev. 65 (Spring 1993).

4. See footnote 2, 37 M.J. at 451.

558

Mil.R.Evid. 707 and applying the rationale of *Daubert,* a military judge could properly exercise discretion to exclude the results of a polygraph examination.

The key issue for us remains, however, whether a rule which forecloses discretion and compels exclusion of polygraph evidence is constitutionally permissible.

### III.

The Supreme Court has not been reluctant to strike down evidentiary rules that restrict an accused's ability to present favorable evidence at trial. In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the court held that the Compulsory Process Clause of the Sixth Amendment provides an accused the right to obtain witnesses in his or her favor and have them testify, notwithstanding the effect of state statutes regarding competence of codefendants to the contrary. In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the court recognized that the right to call witnesses in one's own behalf is also an essential component of constitutional due process, and held that a state hearsay rule which compromised this right must yield. And in *Rock v. Arkansas,* 483 U.S. 44 at 61, 107 S.Ct. 2704 at 2714, 97 L.Ed.2d 37 (1987), the court explained that "a state's legitimate interest in barring unreliable evidence [the defendant's hypnotically refreshed testimony] does not extend to per se exclusions that may be reliable in an individual case."

The per se exclusion of polygraph evidence mandated by Mil.R.Evid. 707 is based, according to the drafters' analysis, on several policy grounds, including (1) fear that court members would be misled, (2) concern that a confusion of issues would arise, (3) the possibility that the trial would incur a substantial waste of time, and (4) that the polygraph is inherently unreliable. The first three of these reasons are in the nature of matters that are routinely resolved by trial judges under Mil.R.Evid. 403. The fourth reason is, in its worst light, disingenuous, and at best incongruous with the substantial investment

the Department of Defense has made, and continues to make, in polygraph examinations—not to mention the observation in *Gipson* that "[t]he greater weight of authority indicates that it can be a helpful scientific tool."

■ In this case the appellant twice submitted to government administered polygraph examinations, both of which resulted in arguably exculpatory results. As the *Gipson* court noted, however, there is no right to present evidence—however much it purports to exonerate an accused—unless it is shown to be relevant and helpful. But the question of whether these findings were reliable, relevant, or helpful was, by virtue of Mil.R.Evid. 707, never addressed. The rule simply removes judicial discretion from this critical step in the evidentiary process. We hold under the facts of this case that appellant's Fifth Amendment right to a fair trial by court-martial, combined with his Sixth Amendment right to produce favorable witnesses on his behalf, affords him the opportunity to be heard on these foundational matters, and allows for the possibility of admitting polygraph evidence, notwithstanding the explicit prohibition of Mil.R.Evid. 707.

### IV.

A footnote in the *Rodriguez* majority opinion suggested that Mil.R.Evid. 707 may ironically survive constitutional scrutiny only to the extent that it excludes polygraph evidence offered by the prosecution, but not the defense. If this is the result, so be it. Our military justice system is replete with examples of safeguards for the rights of military accused which are not available to their civilian counterparts. Recognizing yet another of these advantages not only enhances the perception of fairness that is so vital to the integrity of our system, it also reinforces the basic tenet of Anglo–American jurisprudence that we are better served by protecting the innocent than by convicting the guilty.[5] In his defense of British soldiers accused of perpetrating the Boston massacre, John Adams stated the proposition thusly:

5. *See* Note, *Admission of Polygraph Results: A Due Process Perspective,* 55 Indiana Law Journal  157 at 189 (1979).

[I]t may be proper to recollect with what temper the law requires we should proceed ... we find it laid down by the greatest English judges ... we are to look upon it as *more beneficial* that many guilty persons should escape unpunished than one innocent person should suffer. The reason is because it is of more importance *to the community* that innocence be protected than it is that guilt should be punished.[6] (Emphasis added)

In no community is this reason more compelling than in a military community, where fairness in discipline is so critical to its purpose.

## V.

The record of trial is returned to The Judge Advocate General for remand to the same or a different convening authority for a hearing on the admissibility of the proffered polygraph evidence consistent with this opinion. The convening authority will refer the record to a general court-martial for a limited hearing. The military judge of the court-martial will, under the provisions of Article 39(a), Uniform Code of Military Justice, take evidence and rule on the defense motion. If the judge rules in favor of admission of the evidence, he will set aside the contested findings of guilty and the sentence. He will then refer the matter to the convening authority, who may order a rehearing on the contested charges or, if he deems such a rehearing impractical, may dismiss the contested charges and order a rehearing on the sentence only. If that too is deemed impractical, he may reassess the sentence. If the judge rules against admission of the evidence, then an authenticated, verbatim record of the limited rehearing will be transmitted directly to this court.

Senior Judge CREAN and Judge GONZALES concur.

---

6. P. Smith, *John Adams* 124 (1962).