McLaughlin, Judge:
The appellant was tried on various dates in April — June 1992, by a special court-martial composed of officer members. Contrary to *924 Ms plea, the appellant was convicted of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a, and sentenced to reduction to pay grade E-l, forfeiture of $520.00 pay per month for 2 months, confinement for 2 months, and a bad-conduct discharge. The sentence was approved by the convening authority.
The evidence against the appellant consisted entirely of urinalysis results and expert interpretation. The appellant, a petty officer with proven, lengthy good service, took the stand in his own defense and explicitly denied ever knowingly using cocaine. The appellant has assigned eight errors in his brief.[1]
MILITARY JUDGE’S REFUSAL TO ADMIT EXCULPATORY HAIR ANALYSIS
At a preliminary evidentiary hearing conducted pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), on the issue of admissibility of exculpatory defense expert testimony regarding the results of tests of the appellant’s hair samples for recent one-time cocaine use, the military judge received briefs, heard testimony of the defense and Government expert witnesses, and oral argument of counsel. Ultimately, the military judge ruled that the expert testimony could not be presented to the members. The appellant claims that the judge erroneously applied the test of admissibility of scientific evidence contained in the case of Frye v. United States, 293 F. 1013 (D.C.Cir.1923).[2] The briefs and oral argument continually emphasized the standard of admissibility of scientific evidence as being that set forth in United States v. Gipson, 24 M.J. 246 (C.M.A.1987), and that Gipson had superseded Frye. The judge voiced no concern at the correctness of this position, taken by both counsel.
In Gipson, after thorough and comprehensive review of case law and legal scholarship on the vitality of the Frye test after-the 1975 enactment of the Federal Rules of Evidence, the U.S. Court of Military Appeals found that the Military Rules of Evidence, patterned as they are from the Federal Rules of Evidence, superseded the Frye test which “ ‘should be rejected as an independent controlling standard of admissibility.’ ” Gipson, 24 M.J. at 251 (quoting United States v. Downing, 753 F.2d 1224, 1233-37 (3d Cir.1985)).
Subsequent to the Gipson decision, the U.S. Supreme Court, “in light of sharp divisions among the courts regarding the proper standard for the admission of expert testimony,” ruled that the Frye test had been superseded by enactment of the Federal Rules of Evidence. Daubert v. Merrell Dow Pharma *925 ceuticals, Inc., — U.S.-,-, 113 S.Ct. 2786, 2792, 125 L.Ed.2d 469 (1993).
In a more recent decision, concluding that the Government did not carry its burden to establish the requisite foundation of the reliability of polygraph evidence admitted in rebuttal, the U.S. Court of Military Appeals addressed this historical development and focused the result of the debate as follows: “In any given case in which polygraph evidence is offered, the benchmarks against which admissibility must be determined are Mil.R.Evid. 401, 402, 403, and 702.” United States v. Rodriguez, 37 M.J. 448, 452 (C.M.A.1993). We view this pronouncement, in its context, to refer to the benchmarks for the admissibility of hair analysis as well as other scientific evidence.
Has “general acceptance” been banished from the analysis of admissibility of scientific evidence? We think not. Included in the U.S. Court of Military Appeals discussion adopting a new standard for admissibility of scientific evidence, and dispensing with the standard established by Frye, Judge Cox observed:
What tools may the judge use in evaluating probativeness and helpfulness? Ironically, one of the most useful tools is that very degree of acceptance in the scientific community we just rejected as the be-all-end-all standard. The point is, general acceptance is a factor that may or may not persuade; it is not the test. Other factors may now be equally persuasive.
Gipson, 24 M.J. at 252 (citations omitted). In Daubert, the Supreme Court stated: “Finally, ‘general acceptance’ can yet have a bearing on the inquiry____ Widespread acceptance can be an important factor in ruling particular evidence admissible, and ‘a known technique that has been able to attract only minimal support within the community,’ may properly be viewed with skepticism.” — U.S. at -, 113 S.Ct. at 2797 (citations omitted).
In the case before us, the military judge set forth his conclusion on the admissibility of the results of tests on the appellant’s hair for recent, one-time cocaine use after making his findings of fact. Inasmuch as the appellant’s case comes before us for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we are not bound by the military judge’s essential findings. United States v. Cole, 31 M.J. 270 (C.M.A.1990); United States v. Ruhling, 28 M.J. 586, 592 n. 8 (N.M.C.M.R.1988), petition denied, 29 M.J. 289 (C.M.A.1989). Nonetheless, we are generally inclined to give them great deference. United States v. Jones, 34 M.J. 899, 905 (N.M.C.M.R.1992); United States v. Cummings, 21 M.J. 987, 989 (N.M.C.M.R.), petition denied, 21 M.J. 103 (C.M.A.1986); United States v. Bright, 20 M.J. 661, 664 (N.M.C.M.R.), petition denied, 21 M.J. 103 (C.M.A.1985). We have reviewed the military judge’s findings of fact and adopt them as our own.
In ultimately denying the admissibility of such evidence, the military judge stated:
It is on the issue of the soundness and reliability, however, that the court has trouble. The ability of hair analysis to detect the one-time use of cocaine metabolite is not well established or generally accepted in the scientific community. There is no reliable evidence that, had this accused used cocaine on the 24th of January, the hypothetical use date referred to in the testimony, that it would have been present in the hair cut from his head on 8 February 1992. The studies referred to by Dr. Smith [defense expert], two in number and, thus, of somewhat diminished persuasiveness, certainly don’t establish a norm with which this court is comfortable saying, if cocaine had been used in this case, it would have shown up in the accused’s hair. Moreover, only one of these studies dealt with cocaine and only one with hair from the head as opposed to beard hair. That I have questions about where the hair in the studies was obtained from and what difference that might make merely underlines the court’s concern that, while the procedures employed, that is, RIA [radioimmunoassay] and GCMS [gas ehromatography/mass spectrometry], may be beyond reproach, the underlying theory and knowledge deficit in this area remain. I also believe the concerns about washing and linearity are valid and not yet answerable.
*926 Consequently, the court is convinced that the results of analyzing hair for drugs is inadmissible because it lacks the necessary scientific underpinning to reliably be able to detect a one-time use of cocaine. In short, it lacks the objective, demonstrable certainty associated with science. Balancing this fact against the other two areas [confusion of members and pertinence to a factual issue in dispute, both discussed in the judge’s ruling] and giving full weight to the law’s desire to admit new scientific evidence, I hold that the proffered evidence to be inadmissible because it is unreliable and therefore not relevant.
Record 206-08 (emphasis added). The military judge’s entire observation, and particularly the emphasized portion, parallels the holding of the U.S. Supreme Court in Daubert, wherein the Court noted that displacement of the Frye test did not leave the admissibility of scientific evidence without limits: “[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, — U.S. at -, 113 S.Ct. at 2795 (emphasis added). In concluding that the judge was not a slave to the now-superseded Frye test, we note that his language mirrors the foundational predicates set forth in Gipson and the pertinent Military Rules of Evidence set forth in United States v. Rodriguez, 37 M.J. at 452. The military judge was fulfilling his obligation, without benefit of the Daubert decision, to:
[Determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning and methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review.
Daubert at 2796. The Daubert Court concluded:
To summarize: “general acceptance” is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence — especially Rule 702 — do assign to the trial judge the task of ensuring that an expert’s testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.
Id. at 2799.
In the appellant’s case, the military judge correctly concluded that the hair analysis did not rest on a “reliable foundation” such that it could prove or disprove a recent, one-time cocaine ingestion without further developments in the science of hair analysis.
The results of the hair analysis, it is argued, would be used to show the members that the amount ingested would have been so small that the appellant could have ingested it without knowledge and without effect. We note that the Government expert witness testified that the amount of cocaine ingested to obtain a reading of 151 nanograms on the RIA could be very small (“a very tiny amount”), so small as to give no noticeable effects to the person who ingested it. Record at 301. That fact is uncontested.
Although not before the judge on the motion to admit the hair analysis (though we are confident the military judge knew this was a urinalysis case), we find it significant that the thrust of the defense theory, unknowing ingestion, admits the accuracy of the chain of custody and the urinalysis results on the appellant’s urine, which was positive for cocaine.[3] The hair analysis in this case resulted in a finding that there were no cocaine metabolites in the hair. A negative analysis of his hair, in the face of five separate laboratory tests of his urine sample — all positive for cocaine — is most persuasive that the reliability of hair analysis is *927 not what the defense expert would have us believe — particularly for a one-time, small amount ingestion. The result of the hair analysis, therefore, has no probative value.
Additionally, on appeal but not at trial, the appellant has argued that the result of the hair analysis could be used to show that he was not an addict. Without the benefit of argument at the trial level, we will not speculate as to what theory or rule of evidence would allow the hair analysis result to be admitted as evidence for that purpose, and we will not consider that in determining the correctness of the judge’s ruling.
The military judge did not err in ruling that the hair analysis expert testimony and evidence was inadmissible. This assignment of error is without merit.
MILITARY JUDGE’S FAILURE TO INSTRUCT SUA SPONTE
The military judge was not requested by trial defense counsel to give an instruction to the members on ignorance or mistake of fact or law in drug offenses. Rule for Courts-Martial 916(j). The judge did not give the pattern instruction on ignorance or mistake of fact from the Department of the Army Pamphlet 27-9, Military Judge’s Benchbook (Benchbook), Ch. 3, ¶ 5-11 (1985). The defense counsel had no objections or additions to the instructions as given. Record at 368. If the evidence reasonably raised the defense, the military judge had a responsibility to sua sponte instruct the members on that defense. United States v. Buckley, 35 M.J. 262 (C.M.A.1992), cert. denied, — U.S. -, 113 S.Ct. 1365 (1993); United States v. Taylor, 26 M.J. 127 (C.M.A.1988). We find no indication of the defense of ignorance or mistake of fact as an affirmative defense in the record of trial. The defense theory was innocent/unknowing ingestion.
Since United States v. Mance, 26 M.J. 244 (C.M.A.), cert. denied, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988), the elements of the offense of use of a controlled substance are:
1. That on a certain time at a certain place the accused used a controlled substance;
2. That the accused actually knew he used the substance;
3. That the accused knew that the substance used was a particular controlled substance or of a contraband nature; and,
4. That the use by the accused was wrongful.
The members were so instructed, and, additionally, they were instructed that: “An accused may not be convicted of the use of a controlled substance if the accused did not know that the accused was using the substance.” Record at 362. Thus, it is apparent that knowing ingestion has been an element of the offense of wrongful use at least since Manee, and innocent/unknowing ingestion is rebuttal of that element, rather than an affirmative defense. United States v. Berri, 33 M.J. 337, 343 (C.M.A.1991). The judge properly instructed the members in the manner suggested in the current paragraph 3-76.4 n. 2, Benchbook, Ch. 3, (Update Memo 4, 15 April 1993), even though he did not have the benefit of that update at the time. This assignment of error is without merit.
INSUFFICIENT EVIDENCE
Under Article 66(e), UCMJ, 10 U.S.C. § 866(c), a Court of Military Review has the duty to determine not only the legal sufficiency of the evidence but also its factual sufficiency.
The test for legal sufficiency is “whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.” United States v. Turner, 25 M.J. 324 (C.M.A.1987) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979)). When applying this test we are “bound to draw every reasonable inference from the evidence of record in favor of the prosecution.” United States v. McGinty, 38 M.J. 131, 132 (C.M.A.1993) (quoting from United States v. Blocker, 32 M. J. 281, 284 (C.M.A.1991)).
The test for factual sufficiency is “whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused’s guilt beyond a reasonable doubt.” Turner, *928 25 M.J. at 325. After considering the entire record, we find the Government’s case thorough and convincing and are satisfied beyond reasonable doubt of the appellant’s guilt of the offenses of which he was convicted.
REMAINING ASSIGNMENTS OF ERROR
The remaining assignments of error attack the jurisdiction of the appellant’s court-martial on the two bases that the military judge is not guaranteed a fixed term of office and was not appointed to his position in accordance with the Appointments Clause of the U.S. Constitution. These arguments are echoed in attacking the power of this Court’s judges to review the court-martial, as well as an assigned error asserting the lack of impartiality by the Court’s judges. These five systemic attacks on the military justice system have been resolved adversely to the appellant in prior decisions and will not be addressed. Weiss v. United States, — U.S. -, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); United States v. Mitchell, 37 M.J. 903 (N.M.C.M.R.) (en bane), petition granted, 38 M.J. 313 (C.M.A.1993).
Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.
Chief Judge LARSON and Senior Judge WELCH concur.

. I. THE MILITARY JUDGE ERRED BY REFUSING TO ALLOW THE TESTIMONY OF DR. FREDERICK P. SMITH TO BE PRESENTED TO THE MEMBERS WHERE THE RESULTS OF THE HAIR ANALYSIS HE PERFORMED COULD HAVE RESULTED IN APPELLANT’S ACQUITTAL, AND THE MILITARY JUDGE’S RULING WAS ESSENTIALLY AN APPLICATION OF THE STANDARD ENUNCIATED IN FRYE V. UNITED STATES, 293 F. [1013] (DC CIR.1923).
II. THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS SUA SPONTE ON IGNORANCE OR MISTAKE OF FACT OR LAW IN DRUG OFFENSES.
III. THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF KNOWING USE BEYOND A REASONABLE DOUBT.
IV. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY-MARINE CORPS COURT OF MILITARY REVIEW JUDGES’ FITNESS REPORTS VIOLATES PETITIONER'S (sic) RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (CITATION OMITTED.)
V. THE COURT-MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)
VI. THE COURT-MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)
VII. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (CITATION OMITTED.)
VIII. THIS COURT HAS NO POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATION OMITTED.)

. The "Frye test” is an obligation that the proponent of scientific evidence establish as a foundation that the evidence was of a type generally accepted in the scientific community. Frye v. United States, 293 F. 1013 (D.C.Cir.1923).

. In cross-examination and argument the trial defense counsel does continue to remind the members that mankind is not infallible and mistakes could have been made at any point in the handling and testing of the appellant's urine sample, but that is to leave no stone unturned, rather than the theory of the defense.