## UNITED STATES

v.

**Rodney O. MORRIS, 115 60 6610, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 96 01146.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 27 Oct. 1995.

Decided 23 Dec. 1997.

---

698

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

LT Russell J.E. Verby, JAGC, USNR, Appellate Government Counsel.

Before DOMBROSKI, Chief Judge, and SEFTON and OLIVER, Appellate Military Judges.

OLIVER, Judge:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of a false official statement and simple battery, in violation of Articles 107 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 928 (1994)[hereinafter UCMJ].[1] The appellant was sentenced to reduction to the lowest enlisted pay grade and a bad-conduct discharge. On 16 May 1996 the convening authority approved the sentence; however, he suspended the bad-conduct discharge for a period of 24 months from the date of his action.

We have reviewed the record of trial, the eight assignments of error,[2] and the Govern-

---

**1.** The members found the appellant not guilty of committing an indecent assault, but guilty of the lesser-included offense of simple battery.

**2.** I. THE MILITARY JUDGE ERRED WHEN HE FAILED TO DISCLOSE RECORDS CONTAINED IN APPELLATE EXHIBIT L.

II. THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO PROVE APPELLANT MADE A FALSE OFFICIAL STATEMENT.

III. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED AN ASSAULT AND BATTERY OR MADE A FALSE STATEMENT.

IV. THE MILITARY JUDGE ERRED WHEN HE PROHIBITED APPELLANT FROM ELICITING EVIDENCE THAT HE WAS NOT AL-

LOWED TO TAKE A POLYGRAPH EXAMINATION.

V. THE MILITARY JUDGE ERRED WHEN HE PROHIBITED APPELLANT FROM ESTABLISHING THAT THE ALLEGED VICTIM WAS NOT IN AN EXCLUSIVE RELATIONSHIP WITH HER BOYFRIEND AFTER THE VICTIM HAD USED THIS FACT TO CORROBORATE HER LACK OF CONSENT IN THIS CASE.

VI. THE MILITARY JUDGE ERRED WHEN HE ADMITTED EVIDENCE THAT APPELLANT WAS MARRIED. (References and citations omitted.)

VII. THE MILITARY JUDGE ERRED WHEN HE LIMITED APPELLANT'S VOIR DIRE OF THE MEMBERS CONCERNING WHETHER THEY HAD A PREDISPOSITION TOWARD ACCUSATIONS OF SEXUAL ASSAULT AFTER

ment's response thereto. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. After a brief discussion of the facts, we will consider each of the assigned errors in order.

## Facts

The appellant and Lance Corporal M. were co-workers and best of friends. On Monday, 29 May 1995, Memorial Day, they both were enjoying holiday routine. On at least two occasions that afternoon the appellant visited Lance Corporal M. in her barrack's room. On the final visit, she was wearing nothing but a bathrobe. Although their testimony differed markedly on the issue of consent, during his testimony the appellant admitted kissing, sucking, and fondling Lance Corporal M.'s neck and breasts. This activity left several "hickies" and bruises on her upper body. Finally, after she communicated to the appellant in no uncertain terms to stop and get off her, he did so. She did not immediately report the assault.

Later that evening, when Lance Corporal M. was with her boyfriend, Corporal D., he noticed the marks on her neck and they discussed the incident. The next morning one of her co-workers also noticed the marks and inquired as to what happened. Subsequently, Lance Corporal M. filed a complaint with her command and made a statement to the Naval Criminal Investigative Service (NCIS) implicating the appellant in a sexual assault.

Special agents from the NCIS interviewed the appellant on two occasions, on the afternoon of 30 May 1995 and again 2 weeks later. After waiving his rights, the appellant answered questions and eventually signed two written statements. In Prosecution Exhibit 1 the appellant admitted having had a sexual encounter with Lance Corporal M., but claimed that she had consented fully to what he was doing. In Prosecution Exhibit 2, which was taken during an NCIS interview prior to participating in a polygraph, the appellant admitted that he had sexually assaulted Lance Corporal M. over her repeated objections.

The court-martial was hotly litigated, with both the appellant and Lance Corporal M. testifying as to what happened on that afternoon and early evening. The Government called the NCIS agents to introduce the appellant's two statements. The appellant's theory was that Lance Corporal M. had consented to the kissing and fondling, and that he stopped as soon as she manifested her objection. He explained the incriminating admissions in Prosecution Exhibit 2 by testifying that those were the agent's words, not his, and that he only signed because he expected to be exonerated fully once he was given the polygraph. In addition, many witnesses testified in exhaustive detail on collateral matters.[3]

## Partial Denial of the Appellant's Discovery Request

In his first assignment of error the appellant contends that "[t]he military judge erred when he failed to disclose [the] records contained in Appellate Exhibit L." Brief and Assignment of Errors at 3.[4] We disagree.

Prior to the trial, the defense sought the production of all medical, psychological, and counseling records involving Lance Corporal M.[5] Appellate Exhibit III. After the Gov-

---

HAVING ATTENDED SEXUAL HARASSMENT COURSES. (Reference and citation omitted.)
 VIII. THE MILITARY JUDGE ERRED WHEN HE ADMITTED EVIDENCE THAT APPELLANT WAS VERY ROUGH AND AGGRESSIVE WHEN HE ENGAGED IN SEXUAL INTERCOURSE. (Reference and citation omitted.)

3. As an indication of the amount of detail available to belabor, the closing arguments of counsel took 3 hours.

4. Although the appellant's legal contention is obvious from the record, his assignment of error is unartful. A military judge does not disclose, or fail to disclose, matters within the knowledge of the parties. Rather, his obligation is to oversee the discovery process and, later, control the proceedings of the court–martial. See R.C.M. 701; see generally R.C.M. 801. Contrary to the appellant's assertions, the military judge correctly exercised all of his responsibilities in this case.

5. The defense also requested copies of all documents concerning any previous allegations Lance Corporal M. had made of sexual harassment or assault. The military judge ordered that the Government produce those documents. Record at 12.

ernment contended these records were irrelevant, the military judge ordered that all such documents be delivered for his *in camera* review. Record at 8–9. Except for a statement the victim had made to her counselor concerning her recollection of the appellant's attack on the date in question, the military judge determined that these records did not include any information material to his defense. He ordered the records sealed and attached to the original record of trial as Appellate Exhibit L.

The military judge's decision to view the contents of Appellate Exhibit L *in camera* and to disclose only the relevant portions of it to the defense was an appropriate exercise of his authority under RULE FOR COURTS-MARTIAL 701(g)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]; *see United States v. Charles*, 40 M.J. 414, 415 (C.M.A.1994). We have applied a *de novo* approach in determining whether the requested documents were legally relevant to the proceedings. *Charles*, 40 M.J. at 417; *see United States v. Price*, 13 F.3d 711, 722 (3d Cir.1994), *cert. denied*, 514 U.S. 1023, 115 S.Ct. 1372, 131 L.Ed.2d 227 (1995). We have also applied a "clearly erroneous" standard in reviewing the military judge's findings concerning precisely how much of the documents in Appellate Exhibit L to make available to the defense. *See Price*, 13 F.3d at 722; *United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir.1991).

■ "Military law provides a much more direct and generally broader means of discovery by an accused than is normally available to him in civilian courts." *United States v. Reece*, 25 M.J. 93, 94 (C.M.A.1987) (citations omitted). A military accused's discovery rights derive from the Constitution, the UMCJ, and the RULES FOR COURTS-MARTIAL. The appellant's arguments implicate all three of these sources.

■ In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that prosecution suppression of evidence favorable to the defense, after a request for such information, violates constitutional due process whenever the evidence is material to either guilt or punishment. In *United States v. Agurs*, 427

U.S. 97, 107, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976), the Supreme Court extended the Government's duty to produce exculpatory information. The Uniform Code of Military Justice guarantees both sides "equal opportunity to obtain ... evidence in accordance with such regulations as the President may prescribe." Art. 46, UCMJ, 10 U.S.C. § 846.

■ R.C.M. 701 sets out the disclosure obligations for both sides in courts–martial. R.C.M. 701(a)(2) provides that when the defense has requested it, the Government shall permit the defense to inspect any "papers, documents ..., or copies of portions thereof" and "results or reports of physical or mental examinations ..." which are in the Government's possession and which may be "material to the preparation of the defense...." Evidence relevant to impeaching the credibility of a prosecution witness is not automatically "*Brady* material." Impeachment evidence rises to that level if the "reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Stone*, 40 M.J. 420, 422–23 n. 2 (1994).

■ In his brief, the appellant argues various speculative theories which might conceivably support a case for the materiality of these documents. The military judge has an obligation to balance the materiality of possible evidence against the invasion of the valid privacy interests of the alleged victim. *See* MIL.R.EVID. 412(c), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). He did precisely that during his *in camera* review of the materials. We have reviewed the materials contained in Appellate Exhibit L in light of the appellant's legal analysis, both at trial and on appeal. After doing so, we hold that the military judge's determinations as to what to release and what to withhold are amply supported by the record and were correct.

■ Moreover, assuming *arguendo* that the military judge erred in failing to make all or more of these materials available to the appellant at trial, we apply a harmless-error

analysis. *Charles,* 40 M.J. at 418; *see Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987). We conclude that any such error was harmless under the facts of this case. Since the material was, at best, only marginally relevant to impeach Lance Corporal M.'s credibility, it was not the type of exculpatory material which the Supreme Court contemplated in *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97.[6]

■ In reaching this conclusion, we dispute the appellant's claim that this court-martial boiled down to a pure credibility contest. While the testimony of the appellant and his victim were clearly important, the members could have found that they were both lying on the stand and still have convicted the appellant. The most critical pieces of evidence were Prosecution Exhibits 1 and 2, which were supported by the testimony of the NCIS agents who interviewed the appellant. The admissions of the appellant, corroborated by the physical injury to the victim, established the appellant's guilt.

Given the absence of materiality of the documents in Appellate Exhibit L, the likelihood that the military judge would have ruled it inadmissible as evidence, and the overwhelming evidence of guilt, there is no "reasonable probability" that the result of the trial would have been different had the appellant had full access to Appellate Exhibit L. *United States v. Watson,* 31 M.J. 49, 54 (C.M.A.1990)(quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985)). *See United States v. Green,* 37 M.J. 88, 90 (C.M.A.1993).

Because the military judge did not err and, even if he erred, we find the error to be harmless, this assignment of error is without merit.

## Legal Insufficiency

The appellant next claims that the evidence is insufficient as a matter of law to prove that he made a false official statement.

We find the evidence fully sufficient to meet the applicable test.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this court to determine the legal sufficiency of the evidence. The test is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). Applying this test we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991)).

■ The appellant contends that, under relevant language from the Manual for Courts–Martial, his statement to the NCIS on 30 May 1995 could not have been a false official statement. "A statement made by an accused or a suspect during an interrogation is not an official statement within the meaning of [Article 107] if that person did not have an independent duty or obligation to speak." MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 31(c)(6)(a)[hereinafter MCM].

In *United States v. Watkins,* 35 M.J. 709, 714 (N.M.C.M.R.1992), this court concluded that this language from the Manual "is no longer an accurate statement of law, at least insofar as it would apply to statements made to law enforcement agents conducting official investigations." Moreover, our higher court has observed, particularly when proceeded by a valid warning under Article 31, UCMJ, 10 U.S.C. § 831, statements made to criminal investigators are official within the meaning of Article 107, UCMJ, 10 U.S.C. § 907. *United States v. Prater,* 32 M.J. 433, 438 (C.M.A.1991); *United States v. Jackson,* 26 M.J. 377, 379 (C.M.A.1988)(construing Art. 107, UCMJ, 10 U.S.C. § 907, consistent with

---

**6.** The military judge properly ordered that all materials relating to any previous allegations of sexual harassment, sexual assault, and rape were to be disclosed immediately to the appellant. The only persuasive theories of relevance which we find in his brief relate to that type of information which the appellant and his counsel already had available to them. Moreover, they had access to the victim and could have asked her, both during discovery and cross-examination, concerning any prior arguably false allegations of rape or sexual assault.

the construction of 18 U.S.C. § 1001 in *United States v. Rodgers*, 466 U.S. 475, 480, 104 S.Ct. 1942, 1946–47, 80 L.Ed.2d 492 (1984)).

 Nor was this language from the Manual intended to create a defense to the offense of making a false official statement. "There is simply no indication that Congress intended that persons accused or suspected of offenses should have a license to lie to military investigative organizations, while witnesses who give false statements about the same events should be punished." *United States v. Solis*, 46 M.J. 31, 33 (1997).

 The Government clearly met its burden of proving the legal sufficiency of Charge I. *See McGinty*, 38 M.J. at 131–32. Comparing Prosecution Exhibit 1, a sworn written statement the appellant gave to Special Agent Devine on 30 May 1995, and Prosecution Exhibit 2, a similar statement he gave to Special Agent Bedoya on 14 June 1995, it is clear that much of the critical information contained in the earlier statement was false. Moreover, the Government proved that the appellant knew it was false when he signed it and that it was made with the intent to deceive. MCM, Part IV, ¶ 31(b)(3), (4). Therefore, this assignment of error is without merit.

### Factual Insufficiency

In his third assignment of error, the appellant contends that the Government failed to prove beyond a reasonable doubt that he committed either of the offenses of which he was convicted. We disagree.

 The test for factual sufficiency on appeal is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *United States v. Torres–Rodriguez*, 37 M.J. 809, 810–11 (N.M.C.M.R.1993). In ascertaining factual sufficiency, "the trial court determinations are worthy of due deference on review" since the members saw and heard the witnesses and were in the best position to judge their credibility. *United States v. Bright*, 20 M.J.

661, 664 (N.M.C.M.R.1985) (citations omitted).

 The appellant argues that the evidence of record is factually insufficient to establish that he assaulted Lance Corporal M. and later made a false official statement concerning the incident. He contends that the story the victim told was not credible and that his second statement, in which he largely admitted guilt and which made critical portions of his first statement false, was not accurate or reliable.

The record reveals a great deal of cloudy recollections, inarticulate testimony, and apparent efforts to deceive. However, we have no difficulty sifting through it all to reach the kernels of truth necessary to establish these two offenses. The appellant's second statement is probably the best summary of what happened in Lance Corporal M.'s room early on the evening of 29 May 1995. And that statement reveals two things: (1) that the appellant committed at least a simple assault; and (2) that he lied in various material respects in his first sworn statement to NCIS.

Even though this panel of members considered all the evidence, we would not affirm unless we ourselves were convinced of the appellant's guilt beyond a reasonable doubt. After a careful review of the entire record, we are so convinced. Therefore, this assignment of error is without merit.

### Polygraph Examination

 The appellant next claims that the military judge erred when he prohibited him from eliciting evidence that he was not allowed to take a polygraph examination. We conclude that the military judge ruled correctly.

Because the appellant's second statement to NCIS was so critical in the Government's case, the appellant attempted to discredit what it contained. The basis for his attack was that the document was inaccurate and that he had signed it only because he thought he would immediately afterward take a polygraph which would exonerate him. The members considered his testimony in this regard. They also had evidence concerning the stages of a polygraph examination and the purpose of the preliminary stage. The

appellant was able to cross-examine Special Agent Bedoya as to the circumstances surrounding the taking of the examination.

However, the appellant contended at trial that the military judge should also have permitted him to give and elicit additional testimony that the NCIS did not actually permit him to take a polygraph on this occasion. The purpose would be to demonstrate that the NCIS took his statement in bad faith. The appellant challenges the military judge's ruling by arguing that appellant was denied an adequate opportunity to attack the reliability of Prosecution Exhibit 2.

■■■ We reject the appellant's argument. The military judge did a commendable job of balancing the letter and spirit of the applicable rule of evidence against the appellant's right to present a defense. Military Rule of Evidence 707 provides as follows:

(a) Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take or taking of a polygraph examination, shall not be admitted into evidence. (b) Nothing in this section is intended to exclude from evidence statements made during a polygraph examination which are otherwise admissible.

Under the plain language of this rule, the military judge's ruling was correct. By adding this Rule, the 1991 amendment to the Manual for Courts–Martial restored the armed forces to the approach followed in the 1969 Manual. *Cf. United States v. Gipson*, 24 M.J. 246, 253 (C.M.A.1987)(2–1 decision holding that the trial judge has the discretion to admit the results of polygraph examinations); *United States v. Williams*, 39 M.J. 555, 558 (A.C.M.R.1994)(holding that the absolute ban on polygraph evidence violated due process and the right to present evidence, citing, *inter alia, Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). The concerns behind this rule include: that the members would be tempted to abrogate their obligation to determine the truth if a polygrapher, armed with the results of a polygraph test, could tell them

whom they should believe; confusion of the issues; waste of time; and lack of proven scientific reliability of the polygraph. MIL. R.EVID. 707, Analysis, MCM, App. 22, at A22–48. *See United States v. Williams*, 43 M.J. 348, 357 (1995)(Sullivan, J., concurring in the result)(quoting *Brown v. Darcy*, 783 F.2d 1389, 1396–97 (9th Cir.1986)).

■■■ Our superior court has since rejected, on 3–2 votes, the absolute bar which Military Rule of Evidence 707 would impose with respect to polygraph test results. As long as the military judge determines that the test was scientifically valid as applied to the accused's case and the accused offered the results to rebut an attack on his in-court testimony, the court ruled that it is unconstitutional to exclude it. *United States v. Scheffer*, 44 M.J. 442, 448–49 (1996), *cert. granted*, — U.S. —, 117 S.Ct. 1817, 137 L.Ed.2d 1026 (1997);[7] *United States v. Nash*, 44 M.J. 456, 457–58 (1996). However, that is not the situation the military judge faced in the appellant's case. Rather, the appellant wanted to introduce his willingness to take the test and the unwillingness of the NCIS to give it to him. His intent was to undermine the credibility of the second sworn out-of-court statement he gave to NCIS.

The military judge also determined that evidence concerning the appellant's offer to take a polygraph and that it was not given was inadmissible under Military Rule of Evidence 403. *See United States v. Berg*, 44 M.J. 79, 80 (1996)(per curiam). He gave solid reasons for ruling as he did. Record at 198–203. *See United States v. Houser*, 36 M.J. 392, 399–400 (C.M.A.1993) (holding that the military judge has considerable discretion to exclude relevant evidence under Military Rule of Evidence 403). He then properly instructed the members that, while they could consider the testimony to determine the circumstances under which Prosecution Exhibit 2 was taken, they were not to speculate as to any results of a polygraph or even whether or not one was given.

■■■ Finally, we conclude that even if the military judge did err in failing to permit the

---

7. On 24 November 1997 the U.S. Supreme Court heard oral arguments on this issue.

defense to elicit this evidence, the error was harmless. Through his own testimony and the cross-examination of the NCIS agent, the appellant was able to develop the circumstances under which he gave the second statement.[8] He testified that it was out of context and inaccurate, and that Special Agent Bedoya was rude and overbearing. His counsel argued on findings that the statement was not reliable or accurate. Record at 801.

Moreover, had the appellant been allowed to introduce this additional evidence to support his "bad-faith" argument, the NCIS agent would no doubt have been permitted to answer the question: "Well then, why didn't you give him the exam?" This would have elicited the response: "Because the suspect had just confessed. There was no benefit or purpose in spending several additional hours to give him a polygraph exam at that point." We doubt that this additional testimony would have made the resolution of the matter any easier for the members. We certainly doubt it would have made them more likely to acquit the appellant.

Because the military judge provided appropriate rulings under either Military Rule of Evidence 707 or 403 and, in any case, any error was harmless, this assignment of error is without merit.

### Evidence that the Victim was not in an Exclusive Relationship with her Boyfriend

In his fifth assignment of error, the appellant contends that the judge erred when he prohibited him from establishing that the victim was not in an exclusive relationship with her boyfriend. He argues that the Government had elicited that she was in such a relationship, implying that it was exclusive, to corroborate her story that she had not consented to his advances.

In any case where a person is charged with a nonconsensual sexual offense,

evidence of a victim's past sexual behavior is not generally admissible. MIL.R.EVID. 412. The rule "is primarily one of relevance...." *United States v. Greaves,* 40 M.J. 432, 439 (C.M.A.1994). "When the defense seeks to present evidence which is subject to the exclusionary provision of MIL.R.EVID. 412, it must clearly demonstrate that the proffered evidence is relevant, material, and favorable to its case." *United States v. Fox,* 24 M.J. 110, 112 (C.M.A.1987). Commonly referred to as the "rape-shield" rule, Military Rule of Evidence 412 was adopted in response to the regular defense practice of eliciting the most intimate details about a rape victim's sexual history. *United States v. Sanchez,* 44 M.J. 174, 178 (1996). Other than when certain exceptions apply, there is no purpose for eliciting such evidence other than to impose an additional indignity on the victim. *Id.* (citing the legislative history).

There are three exceptions to the general rule of inadmissibility. The proponent may offer evidence of the victim's past sexual behavior: (1) with persons other than the accused on the issue of whether or not the accused was the source of the semen or injury; (2) with the accused on the issue of whether the victim consented to the sexual behavior alleged; and (3) where it is constitutionally required. MIL.R.EVID. 412(b)(1). By their terms, none of the first two exceptions apply to this evidence which the military judge ruled inadmissible.[9] We must examine, therefore, whether the admissibility of the victim's past sexual behavior is constitutionally required.

In *Olden v. Kentucky,* 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988), the Supreme Court held the admission of such evidence constitutionally required where a victim had a motive to testify falsely to explain to her boyfriend why she was with another individual. In *United States v. Gray,* 40 M.J. 77, 80 (1994), our superior court recognized that there may be times

---

8. When the appellant first appeared for the polygraph, he was tired and hung over from lack of sleep and overconsumption of alcohol. Not wishing to take advantage of his weakened condition, the NCIS postponed the polygraph exam until a later date, recommending that the appellant report fully rested and alert.

9. Of course, the appellant brought in a great deal of evidence concerning the prior sexual activity in which the victim and he had engaged. This was properly admissible under the second exception, on the issue of consent.

where an accused has a constitutional right to admission of evidence of the victim's past sexual behavior. For example, it may be that the victim's sexual history shows a motive to fabricate or exaggerate the charge. *See, e.g., United States v. Dorsey,* 16 M.J. 1, 4 (C.M.A.1983).

█ In the instant case, the appellant sought to elicit information from Lance Corporal M. on cross-examination as to whether she was engaging in sexual relations with any men other than her current boyfriend, Corporal D. Record at 298. Over a timely and specific objection, his counsel claimed that this evidence was probative of her motive to fabricate. The military judge rejected that proffer as a basis for admitting the evidence under Military Rule of Evidence 412.

On appeal, the appellant has suggested a somewhat different theory. He now contends that the Government used the testimony of Lance Corporal M. concerning her relationship with Corporal D. to make it more likely that she did not consent to having a sexual relationship with him. Appellant's Brief and Assignment of Errors at 16. Once the Government "opened the door" to corroborate her testimony, the appellant was entitled to attack the implication it left.

However, under either theory, the appellant misconstrues the thrust of Lance Corporal M's testimony. During the evening in question, she testified that the appellant asked her why she was resisting his romantic advances. She responded that she just wanted to be his friend and that she was dating someone else. Record at 284–85. She did not imply that but for an exclusive relationship with Corporal D., she would have responded to his overtures. She was simply giving him an answer to make him desist. Any evidence that Lance Corporal M. was dating or having sexual relations with other men would not have established any motive to fabricate on her part.

The appellant was able to cross-examine the victim and Corporal D. fully to develop a far more solid basis for her to fabricate a story of sexual assault on this occasion. This was the classic situation the Supreme Court discussed in *Olden v. Kentucky,* 488 U.S. at 232, 109 S.Ct. at 483. After this incident

with the appellant, Lance Corporal M. spent the later part of the evening with her boyfriend. After he noticed the "hickies" on her neck, he questioned her about how she got them. She initially responded, in angry jest, that she was having an affair with somebody else. She testified that she then told him that this was untrue, explaining that the appellant had forced himself on her. Record at 336–37. The appellant used this admitted lie and change-of-story, among several other concessions and exaggerations she made, to cast doubt on the credibility of her in-court testimony. However, given the appellant's admissions of guilt and the other evidence in the case, the members concluded that the incident transpired largely as the appellant had described it in Prosecution Exhibit 2 and in violation of Lance Corporal M's expectations not to be criminally assaulted.

Therefore, the appellant was not denied his constitutional right to confront his accuser. *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The military judge ruled correctly and this assignment of error is without merit.

### Relevance of the Appellant's Marital Status

Citing Military Rules of Evidence 401 and 403, the appellant claims that the military judge erred when he admitted evidence that appellant was married at the time of the assault. We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." MIL. R.EVID. 401. The military judge has discretion to exclude relevant evidence where it is "substantially outweighed" by countervailing factors, such as confusion and waste of time. MIL.R.EVID. 403. The standard of review of a military judge's ruling on the basis of relevance is abuse of discretion. *United States v. Sullivan,* 42 M.J. 360, 363 (1995); *United States v. Orsburn,* 31 M.J. 182, 187 (C.M.A. 1990).

█ In this case the military judge ruled that the fact of his being married to someone

else was relevant to support the testimony of the victim that she felt comparatively safe with the appellant in a "big brother/little sister" relationship. He also noted that it was tangentially relevant for the purpose of proving an element of indecent assault, that the appellant was not married to the victim. We are confident that the military judge did not abuse his discretion in ruling the evidence relevant. We are also confident that he was correct in ruling that the relevance was not "substantially outweighed" by other considerations.

■ Moreover, even if the military judge erred in admitting this evidence, we believe it was harmless. The fact of his being married was contained in the descriptive background paragraph which the appellant provided to NCIS. Prosecution Exhibits 1 and 2. Additionally, the appellant testified that he initially went into Lance Corporal M.'s room that afternoon for the innocent (and laudatory) purpose of speaking with his wife on the telephone. Finally, the military judge appropriately instructed the members that they were not to consider the appellant's marital status as evidence that he had an evil disposition or a criminal propensity. Because the military judge's ruling was correct, and if incorrect, was harmless, this assignment of error is without merit.

### Summary Assignments of Error

We have carefully reviewed the appellant's final two summary assignments of error. For the reasons discussed briefly below, we consider both of them to be without merit.

■ The appellant contends that the military judge erred when he limited appellant's *voir dire* of the members concerning whether they had a predisposition toward accusations of sexual assault after having attended sexual harassment courses. We disagree. The standard of review is whether the military judge clearly abused his discretion. The military judge must balance the benefits of the *voir dire* process while avoiding the waste of valuable time. *United States v. Jefferson*, 44 M.J. 312, 318 (1996). The primary purpose of *voir dire* is to determine whether the members can serve "free from substantial doubt as to legality, fairness, and impartiali-

ty." R.C.M. 912(f)(1)(N). Given the limited relevance of the inquiry the appellant proposed to determine a possible basis for challenge, we are confident that the military judge did not abuse his discretion in preventing him from asking this question. Finally, we note that the appellant used his peremptory challenge to remove the individual now complained of from the panel. Record at 193–94. We are confident that the officer and enlisted members who composed this panel were impartial and conscientious, and that the appellant received the fair trial to which he was entitled. Art. 59, UCMJ, 10 U.S.C. § 859.

■ Finally, the appellant contends that the military judge erred when he admitted evidence that appellant was very rough and aggressive when he engaged in sex. This information was contained in Prosecution Exhibit 2. At trial he had moved to exclude this evidence under Military Rule of Evidence 404(b) on the basis that this constituted uncharged misconduct. Record at 241. The context in which he made this statement was that he may have gone overboard in his sexual overtures toward Lance Corporal M. on this occasion. Therefore, it was directly relevant to the crimes of which he was charged. His statement in Prosecution Exhibit 2 may **imply** that he had engaged in unconsented-to sex with other women. However, on the face of the statement, it is not evidence of other crimes—rough, aggressive sex is generally not a crime. Moreover, the military judge eliminated any possible prejudice by giving a limiting instruction that the members could not use this admission as evidence that the appellant had a criminal disposition or was a bad person.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Chief Judge DOMBROSKI and Judge SEFTON concur.