UNITED STATES, Appellee,

v.

Major Patrick H. ZAISS, 179–46–2323, United States Army, Appellant.

ARMY 9300931.

U.S. Army Court of Criminal Appeals.

6 April 1995.

For Appellant: Jan Horbaly (argued); Colonel Stephen D. Smith, JAGC, Captain Don F. Pollack, JAGC (on brief).

For Appellee: Major Lyle D. Jentzer, JAGC (argued); Colonel John M. Smith, JAGC (on brief).

Before CUTHBERT, EDWARDS, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON PETITION FOR NEW TRIAL

GONZALES, Judge:

Contrary to his pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of attempted larceny of a bug light and larceny of a laptop computer, both of which were military property, in violation of Articles 80 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 921 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a dismissal and confinement for forty-five days.

Before this court, the appellant asserts that the evidence is not legally or factually sufficient to support the findings of guilty. He further requests that he be granted a new trial based on newly discovered evidence. We disagree with his assertion and deny his request.

### I. The Government's Case

The appellant departed his unit at Fort Leavenworth, Kansas, in late July 1992, for six months of temporary duty (TDY) with Joint Task Force Bravo (JTFB) in Honduras as the J5 (civil affairs officer). On Friday, 22 January 1993, as part of the process for returning to Fort Leavenworth, the appellant's unaccompanied baggage was inspected by Mr. Colon–Sanchez, an experienced U.S. military customs inspector, at the appellant's quarters. Mr. Colon–Sanchez noticed that the appellant was shipping what appeared to be a government issued stand-up bug light and a Zenith laptop computer that was in a black bag and enclosed in a footlocker. He also noticed that a sticker, possibly a government identification sticker, had been removed from the laptop. The appellant told Mr. Colon–Sanchez that the laptop might look like government property, but that it was his personal computer that he brought from Fort Leavenworth. He also told Mr. Colon–Sanchez that he brought the bug light from Fort Leavenworth. Mr. Colon–Sanchez asked the appellant if he had a receipt for these two items to show that they belonged to him and the appellant stated that he did not. Mr. Colon–Sanchez notified his supervisor, who notified the military police, because, as Mr. Colon–Sanchez described the situation, "[I] don't have authority to apprehend or detain anybody."

Two military police (MP) investigators, Army Sergeant (SGT) Martori and Air Force Technical Sergeant Polensky, were dispatched to the appellant's quarters. After being briefed by Mr. Colon–Sanchez, SGT Martori asked the appellant for his inbound

shipping document (DD Form 1299). Upon reviewing it, she noticed that it did not have an entry for a laptop computer or a bug light. She asked the appellant, "What's going on here, sir?" He responded that the laptop belonged to his unit at Fort Leavenworth, but indicated that he hand-carried it with him to Honduras. He also said that he brought the bug light with him from Fort Leavenworth, but that if it was a problem, he would leave it in Honduras. Sergeant Martori then asked the appellant if anyone could verify that he was authorized to have the laptop. He provided her with the name of Captain (CPT) Yroz and his phone number at Fort Leavenworth. At no time did he tell her that he had inadvertently shipped the laptop to Honduras from Fort Leavenworth in his unaccompanied baggage and had just recently discovered it in the last sealed box he opened. Nor did he explain that he thought the bug light was abandoned military property that he obtained from the JTFB headquarters supply room in October 1992.

The MP investigators went to the JTFB headquarters supply room and obtained a copy of the hand receipt for the government property in the appellant's quarters. They noticed that the bug light was the last entry on the last page of the receipt, the same page where the appellant signed twice verifying an inventory on 17 November and once on 18 November 1992. Sergeant Martori then called CPT Yroz who told her that the appellant was not authorized to have the laptop. Captain Yroz also related that the laptop was discovered missing in October 1992, and that he called the appellant in November 1992, to ask him if he had the laptop. The appellant told him that he did not. Mr. Aston, the current hand receipt holder, initiated a report of survey in January 1993, and the value of the laptop was listed as $1,524.00. While CPT Yroz was being questioned by SGT Martori about the laptop, the appellant called CPT Yroz on another line. When he finished his conversation with SGT Martori, CPT Yroz spoke with the appellant. The appellant told CPT Yroz that he had found the laptop in his unaccompanied baggage the Friday before (15 January 1993), and that he had been trying to contact CPT Yroz on the

previous three days to give him this information.

Although not conveyed to SGT Martori, CPT Yroz knew the appellant's explanation for his inability to account for the whereabouts of the missing laptop. When CPT Yroz spoke with the appellant in November 1992, the appellant explained that he had had possession of the laptop, but only until June 1992. That was when he returned from a TDY/leave trip to find that the locked wall closet he had secured the laptop in had been broken into during his absence and the laptop was missing. He assumed, without verifying serial numbers, that this laptop had been connected to a laser printer in the office. Based on this assumption, he returned some accessories for the laptop to the former hand receipt holder, Major (MAJ) Draffen. Also, CPT Yroz did not mention to SGT Martori that he received a message from the appellant on Tuesday, 19 January 1993. Captain Yroz's secretary, Mrs. Upchurch, had taken the message requesting that CPT Yroz return the appellant's call. Captain Yroz never did so. According to CPT Yroz, had the appellant requested permission to take a laptop to Honduras, it would have been approved.

Based on the information provided by CPT Yroz, the MP investigators transferred the investigation to Special Agent (SA) Moellering of the Criminal Investigation Command (CID). After being advised for the first time of his Article 31(b), UCMJ, and *Miranda* rights, the appellant told SA Moellering that he brought the bug light with him from Fort Leavenworth. He also maintained that he had no knowledge that the laptop was in his possession until the week before when he opened the last sealed unaccompanied baggage box and discovered it. When SA Moellering asked the appellant why he had told the two MP investigators that he had hand-carried the laptop with him to Honduras, the appellant asked for an attorney, thus ending the interview.

The laptop was the property of the appellant's office at Fort Leavenworth. It was discovered missing by Mr. Aston, the subsequent hand receipt holder after MAJ Draf-

fen, when he conducted a complete serial number inventory in October 1992. He reported this shortfall to CPT Yroz and expressed to him that he thought the appellant was the last known person to have possession of it. Mr. Aston remembered issuing the appellant this same laptop in 1991, because he did not have enough desktop computers to give one to the appellant. At the time he was issued the laptop, the appellant did not sign a sub-hand receipt. Sub-hand receipting was required only when someone in the office wanted to take a laptop on a TDY trip. The appellant had never taken a laptop on any of his previous TDY trips and he did not sign a sub-hand receipt to take a laptop with him to Honduras. After the report of survey was initiated, but before it was submitted to the approval authority in mid-January 1993, Mr. Aston asked Lieutenant Colonel (LTC) Pienkowski to call the appellant and ask him once again if he had the laptop or knew where it could be. The appellant told LTC Pienkowski that he did not have it.

Turning to the circumstances surrounding the bug light, when the appellant arrived in Honduras, his quarters had a broken bug light, which was not listed on the quarter's hand receipt that the appellant signed on 3 and 5 August 1992. Shortly thereafter, the appellant turned in the broken bug light for repair to Staff Sergeant (SSG) Davis, the JTFB headquarters supply sergeant.

After going several weeks without a bug light in his quarters, but before 1 November 1992, the appellant asked SSG Davis for a working bug light. Staff Sergeant Davis told him that the only bug lights he had were all broken. The appellant noticed the pile of broken bug lights in one of the supply room's wooden storage areas that was located across from the headquarters orderly room. He asked SSG Davis if he could take one because he thought he could repair it himself. Staff Sergeant Davis agreed and according to SSG Davis, "[T]he change took place." He also gave the appellant a phone number of some local businesses that could assist in repairing the bug light.

Nothing in their conversation led SSG Davis to believe that the appellant was going to keep the bug light as his own property if he fixed it. Staff Sergeant Davis instructed his supply clerks to get the remaining bug lights repaired and some were fixed by merely replacing the bulbs. None of the bug lights were thrown away or discarded. Staff Sergeant Davis had a duty to maintain accountability for every bug light, even though they were expendable/durable items.

The appellant repaired the bug light he received from SSG Davis. Because it was an accountable item, this same bug light was subsequently listed on the appellant's quarter's hand receipt that he signed twice on 17 November and once on 18 November 1992. Any hand receipt that may have been signed by the appellant when he received the bug light from SSG Davis would have been thrown away when a new quarters' hand receipt was signed by the appellant on 17 November 1992.

The appellant had sixteen years of commissioned service and, as a captain, commanded a large logistical headquarters company in support of an infantry battalion in the 197th Infantry Brigade.

## II. The Appellant's Defenses

The appellant asserted at trial that he inadvertently took the laptop to Honduras and, thus, had no intent to steal it. He testified that he always secured the laptop on a shelf in a locked wall closet in his office whenever he went TDY. Upon returning from a TDY/leave trip in June 1992, his closet had been broken into and the laptop was missing from the shelf. He asked his coworkers about the laptop. He was told that MAJ Hoey cut the lock on the closet door and that the laptop was removed to the common area and connected to a laser printer. The appellant took note of this connection, but never verified the serial number of the connected laptop to ensure that it was the same laptop.

Shortly thereafter, the appellant received orders to Honduras. In his scramble to ship his unaccompanied baggage before personally departing for Honduras, he shipped several boxes that were in his office wall closet without him or the packers verifying their contents. He opened the last box on Friday night, 15 January 1993, and found the laptop.

After verifying that it was in good working condition, he used the laptop to type several official documents, including his officer efficiency report (OER) support form and letters of appreciation to personnel assigned to JTFB. He also testified that he removed a government identification sticker from the laptop because it had curled up.

The following Monday was a holiday (Martin Luther King's birthday). On Tuesday, 19 January 1993, he called CPT Yroz to report that he had found the laptop. When he was told by Mrs. Upchurch that CPT Yroz was out of the office, he simply left a message with her for CPT Yroz to return his call. He never received a call from CPT Yroz. The appellant subsequently tried to call CPT Yroz several times, but each time his call did not go through.

When Mr. Colon–Sanchez came to inspect his unaccompanied baggage shipment, he told him that the laptop was, "a personal computer that was mine," meaning that it did not belong to JTFB, and that he had brought it from Fort Leavenworth. He felt obligated to tell the MP investigators the same thing, even though he knew this was not true.

With respect to the bug light, the appellant contended that it was his personal property because it had been abandoned. Staff Sergeant Davis told him that he could keep a bug light if he was able to fix it. The bug light came from a pile of broken ones that all appeared to be discarded. Staff Sergeant Davis did not require him to sign a hand receipt. He fixed the bug light and, thus, believed that it was his to keep. If he was mistaken in his belief, it was an honest mistake. When he signed the hand receipt on 17 November 1992, he was in a rush to get to a meeting and quickly signed his name without taking notice of the hand-written bug light entry on the form. Although he initially told Mr. Colon–Sanchez and the MP investigators that the bug light came from Fort Leavenworth, he also told them that if it was a problem, he'd leave it behind. He misled Mr. Colon–Sanchez because he did not want to jeopardize the good OER he was about to receive from JTFB that he hoped would benefit him later at his pending show cause elimination board.

## III. Discussion

 The test for legal sufficiency of the evidence is whether a reasonable factfinder, viewing the evidence in the light most favorable to the prosecution, could find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying this test, we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987), *pet. denied,* 28 M.J. 78 (C.M.A.1989). This includes determining whether we are convinced beyond a reasonable doubt that any defenses in issue did not exist. *United States v. Berri,* 33 M.J. 337, 343 (C.M.A.1991); Rule for Courts–Martial 916(b) [hereinafter R.C.M.]. Both the statute and case law require us to consider that the trier of fact heard and observed the witnesses, and made credibility determinations. *United States v. Irvinspence,* 39 M.J. 893, 896 (A.C.M.R.1994).

The elements of proof for larceny of military property are:

(1) that the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(2) that the property belonged to a certain person;

(3) that the property was of a certain value, or of some value;

(4) that the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner; and

(5) that the property was military property.

Manual for Courts–Martial, United States, 1984, Part IV, para. 46b(1) [hereinafter MCM, 1984].

The only element of proof that the appellant contested with respect to the larceny of the laptop was the element of specific intent. An intent to steal may be proved by circumstantial evidence. Thus, if a person secretly takes property, hides it, and denies knowing anything about it, an intent to steal may be inferred. MCM, 1984, Part IV, para. 46c(1)(f)(ii). Also, a larceny is committed if an intent to steal is formed after the taking and the property is wrongfully withheld with that intent. MCM, 1984, Part IV, para. 46c(1)(f)(i).

The military judge determined that the appellant's testimony about the laptop's inadvertent journey from his office wall closet at Fort Leavenworth to his quarters in Honduras via shipment in his unaccompanied baggage was not worthy of belief. With respect to the bug light, the military judge also determined that the appellant's defense that it was abandoned military property, or in the alternative, that he had an honestly mistaken belief that he could keep the bug light if he fixed it, was unsupportable. Viewing the evidence in the light most favorable to the prosecution, we agree that the military judge could find all the essential elements of both the larceny of the laptop and attempted larceny of the bug light beyond a reasonable doubt.

Under our Article 66, UCMJ, powers, we find the following facts regarding the laptop. When the appellant returned to his office from TDY/leave in June 1992, he realized that accountability for the laptop had been lost. He had never signed a hand receipt for it and others in his office told him that the laptop had been connected to the laser printer. The appellant knew that the connected laptop was a different laptop. When he secretly took the laptop he had been using with him to Honduras, he did not tell anyone and he did not sign a hand receipt for it. The laptop was not listed as part of his unaccompanied baggage on his DD Form 1299, dated 21 July 1992, because, as he told the MP investigators, he hand-carried the laptop with him to Honduras.

Mr. Aston did a serial number inventory in October 1992, and confirmed that a laptop was missing. He asked CPT Yroz to contact the appellant about any knowledge he may have about the missing laptop. The appellant told CPT Yroz in November 1992, that he did not have the laptop and denied knowledge of its whereabouts. If he did not have the intent to keep the laptop before CPT Yroz's call, he intended to do so then. When LTC Pienkowski called him in January 1993, he repeated what he had told CPT Yroz about the missing laptop.

Before his customs inspection, the appellant removed the government identification sticker from the laptop. This allowed him to misrepresent to Mr. Colon–Sanchez his ownership of the laptop by saying that it might look like government property, but that it was his personal computer that he brought from Fort Leavenworth. He misled Mr. Colon–Sanchez because he still intended to keep the laptop as his own. When he realized that the MP investigators were going to contact CPT Yroz, and that his "hand-carried" story would be viewed with skepticism, because of what he told CPT Yroz in November 1992, he attempted to contact CPT Yroz before the MP investigators were able to do so.

Although he was unsuccessful in contacting CPT Yroz first, he nevertheless understood that his earlier statements to CPT Yroz and LTC Pienkowski left him no choice but to change his story and, thereby, abandon his intent to keep the laptop. He accomplished this by telling CPT Yroz and SA Moellering that he did not know that the laptop was in his possession until the Friday night of the week before, when he opened the last unaccompanied baggage box. However, he did not tell SA Moellering about his 19 January 1993, phone call to CPT Yroz. Even though the phone message he left for CPT Yroz made no reference to the laptop, it nonetheless provided the appellant with a convenient pretext to bolster his "inadvertent" theory.

We find that there is ample evidence, much of it from the appellant's own statements, for us to be convinced beyond a reasonable doubt that the "inadvertent" theory was not

credible and that, instead, the appellant had the specific intent to steal the laptop.

■ Under our Article 66, UCMJ, powers, we find the following facts as to the bug light. All of the broken bug lights were maintained in a wooden storage area in the supply room, not at a trash dump or inside a Dempster–Dumpster. None of the bug lights were abandoned or discarded property. Staff Sergeant Davis never gave any indication that the bug lights were available for the taking and that the appellant could take and keep one if he could fix it.

The appellant subsequently signed a hand receipt three times that listed the bug light. His signature verified that it was accountable military property. If the appellant held a mistaken belief that he could keep the bug light if he fixed it, this belief was not honest in view of his repeated false statements to Mr. Colon–Sanchez, the MP investigators, and SA Moellering that he brought the bug light with him from Fort Leavenworth. Also, with sixteen years of active military service, the appellant should have understood that accountable military property that is repaired and used exclusively by one individual, does not change the nature of that property.

We are convinced that the defenses of abandoned property and mistake of fact do not exist. Although charged with larceny, we find beyond a reasonable doubt that the appellant is guilty of attempted larceny of the bug light.

Sir Walter Scott once said, "O, what a tangled web we weave, when first we practice to deceive!"[1] We have reviewed the record in the court-martial proceedings and the briefs filed by the appellant and the government. We have considered the oral arguments presented by both counsel. After carefully reviewing the record, we hold that the evidence is both legally and factually sufficient to support the findings of guilty.

## IV. Petition for New Trial

■ The appellant (the petitioner for new trial) contends that he is entitled to a new trial on the grounds of newly discovered evidence. The petition is based on a private polygraph test the appellant took six months after his court-martial. The results of the examination indicate a strong showing of no deception in the appellant's answers to three questions about the two offenses for which he was found guilty.

■ A new trial based on newly discovered evidence will not be granted unless the new evidence: (1) was discovered after trial; (2) would not have been discovered at the time of trial in the exercise of due diligence; and, (3) if considered at trial, would probably have produced a substantially more favorable result for the appellant. *United States v. Suarez*, 35 M.J. 374, 377 (C.M.A.1992); R.C.M. 1210(f)(2)(A)–(C).

While the appellant's new evidence was discovered after his trial, we find that it could have been discovered at the time of trial in the exercise of due diligence. We note that Rule 707 does not prohibit the taking of a polygraph examination before trial. *United States v. Willis*, 41 M.J. 435 (1995). "A person under [criminal] investigation ... may request a polygraph examination. This examination can be used as a means of removing suspicion from the person." Army Reg. 195–6, *Criminal Investigations: Department of the Army Polygraph Activities*, para. 1–4e (1 Sep. 1980). In fact, this is exactly what the accused did in *United States v. Williams*, 39 M.J. 555 (A.C.M.R. 1994), *certif. for rev. filed*, 39 M.J. 408 (C.M.A.1994), the primary case the appellant relies upon to support his petition for new trial. In *Williams*, the accused was charged with larceny and forgery. He consented to take a Criminal Investigation Command (CID) administered polygraph examination, then requested a second CID examination when the results of the first test were inconclusive. The second test strongly indicated no deception. Both tests were administered before trial. Specialist Williams' diligence in taking the government polygraph examinations and then seeking to introduce the results of the two test at his court-martial led to a favorable ruling by this court during the course of regular appellate review under Article 66, UCMJ. *Id.*

---

**1.** Walter Scott, *Marmion*, Canto VI, 1. 532.

Furthermore, the appellant could have agreed to take a polygraph examination on the condition that the convening authority would dismiss the charges if the examination showed no deception. *United States v. Rodriguez*, 37 M.J. 448, 454 (C.M.A.1993) (Crawford, J., concurring). In contrast to *Williams* and *Rodriguez*, the appellant elected to forego both of these permissible avenues of utilizing polygraph examinations in his defense until long after his court-martial was completed.[2]

We also find that the newly discovered evidence would not produce a substantially more favorable result for the appellant at a new trial. According to the appellant's brief, the polygraph charts indicate that the appellant responded truthfully to the following questions:

1. At the time you signed that hand receipt were you aware that the bug lamp was included? (Answer—No)

2. Before being confronted were you going to keep the computer? (Answer—No)

3. Did you make an attempt to advise Captain Yroz that you had found the computer? (Answer—Yes)

Based on the circumstances of this case, the three polygraph questions are very ambiguous and subject to double meaning. The questions lacked specificity, definitiveness, and certainty, thus making the appellant's answers inconclusive and unreliable. Because the questions are not as specific as they should be, the appellant's answers would not necessarily resolve the issue of intent differently than what occurred at his court-martial.

Requests for a new trial on the ground of newly discovered evidence are not regarded with favor and should be granted only with great caution. *United States v. Bacon*, 12 M.J. 489, 492 (C.M.A.1982). Relief is granted only if a manifest injustice would result absent a new trial based on the proffered newly discovered evidence. *United States v. Williams*, 37 M.J. 352, 356 (C.M.A.1993).

The appellant has failed to meet his burden by: (1) showing that the new evidence would not have been discovered at the time of trial in the exercise of due diligence and (2) presenting credible evidence that would indicate that he did not have the intent to steal the laptop and the bug light. Accordingly, using the standard of review for petitions for new trial, we hold that the appellant has not demonstrated that he is entitled to relief. UCMJ art. 73; R.C.M. 1210(f).

### V. Decision

The findings of guilty and the sentence are affirmed.

The Petition for New Trial is denied.

Chief Judge CUTHBERT * and Senior Judge EDWARDS concur.

---

2. The appellant also failed to have either of his two polygraph examiners comply with R.C.M. 1210(c)(9) and submit a sworn affidavit setting forth briefly the relevant facts within their personal knowledge. A signed statement is not the same as an affidavit.

