# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 PIERRE C. T. SCOTT**
**United States Army, Appellant**

ARMY 20150157

Headquarters, Seventh Army Joint Multinational Training Command
Christopher D. Carrier, Military Judge
Lieutenant Colonel Sean T. McGarry, Staff Judge Advocate

For Appellant: Lieutenant Colonel Melissa R. Covolesky, JA; Captain Heather L. Tregle, JA; Captain Matthew D. Bernstein, JA (on brief); Captain Katherine L. DePaul, JA; Captain Matthew D. Bernstein, JA (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

13 June 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one allegation of error[1] which merits discussion and relief. Appellant asks this court to provide appropriate relief to remedy the dilatory post-trial processing of his case. We considered the issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant's *Grostefon* issue concerning one

---

[1] Appellant withdrew an assignment of error asserting he was denied effective assistance of counsel when his counsel allegedly failed to submit an offer to plead guilty to the convening authority (CA). After this court issued an order for appellant's trial defense counsel to address the claim, the trial defense counsel submitted a copy of the offer to plead guilty that was submitted and disapproved by the CA.

of the witnesses providing a letter recanting his testimony merits discussion but no relief. The remaining errors alleged pursuant to *Grostefon* do not merit detailed discussion or relief.[2]

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of one specification each of fraudulent enlistment, desertion, fleeing apprehension, and general disorder, in violation of Articles 83, 85, 95, 134, Uniform Code of Military Justice, 10 U.S.C. §§ 883, 885, 895, 934 (2012) [hereinafter UCMJ]. The military judge also convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 120 (2012). The judge sentenced appellant to a dishonorable discharge and confinement for nine years. The military judge credited appellant with 287 days of pretrial confinement and thirty days of Article 13, UCMJ credit against his sentence to confinement. The CA approved the sentence as adjudged and approved 317 days of confinement credit.

## BACKGROUND

In 2013, appellant was assigned to an engineer unit in Germany. Private First Class (PFC) Stanford was in the same unit as appellant and they were friends. The victim—Specialist (SPC) AB—was also assigned to an engineer unit in Germany. Private Stanford began dating SPC AB in August 2013.

On 11 September 2013, SPC AB visited the barracks room of her boyfriend, PFC Stanford, and they argued. Specialist AB remained in PFC Stanford's barracks

---

[2] Appellant asserts in his *Grostefon* submission: (1) the sentence was unduly harsh; (2) appellant was already charged in state court for resisting apprehension and sentenced to time served; (3) appellant's desertion was a result of his concerns about his family's medical issues and need to find a stable home; and (4) the sexual assault nurse examiner (SANE) testified Specialist (SPC) AB did not complain of injuries or pain the day after the assault. After considering the record, the charges of which appellant was found guilty, and appellant's service record introduced during the government's presentencing case (to include non-judicial punishment under Article 15, UCMJ), the military judge's sentence is appropriate. Appellant received day-for-day credit for any pretrial confinement by civilian authorities. During the providence inquiry for appellant's guilty plea to desertion, the military judge discussed in detail appellant's family situation when he chose not return to his unit. Appellant disavowed any valid defense before he pleaded guilty to the desertion charge. The SANE testified SPC AB did not complain of injuries or pain the next day. This testimony was consistent with SPC AB's testimony that she initially thought appellant was her boyfriend and he inserted his penis inside her only for short time before he stopped.

room and PFC Stanford went to hang-out in another soldier's barracks room with appellant.  Appellant knew SPC AB was in the room sleeping and asked for PFC Stanford's room key.  Appellant used the key to enter PFC Stanford's room.  Specialist AB was asleep in the bed and appellant sexually assaulted her.  Specialist AB left the room upset and crying.

Later that evening, SPC AB told PFC Stanford and another soldier that she was sexually assaulted by appellant.  The next day, SPC AB made a restricted report of the sexual assault.  *See* Dep't of Defense Instr. (DODI) 6495.02, encl. 4, para. 1(b) (28 Mar. 2013).  In October 2013, SPC AB unrestricted the report of the sexual assault.  *See* DODI 6495.02, encl. 4, para. 1(a).  The U.S. Army Criminal Investigation Division (CID) began an investigation.  In December 2013, appellant deserted from his unit.  In May 2014, after resisting apprehension, appellant was arrested in Alabama.

At his court-martial, appellant, SPC AB, PFC Stanford, and nine other witnesses testified on the merits.  The contested issues included consent, lighting in the room at the time of the assault, and SPC AB's motivation to fabricate the allegation of sexual assault.

Specialist AB testified she did not consent to have any sexual contact with appellant.  According to SPC AB's testimony, when PFC Stanford left the room and she went to sleep, a television was on, a candle was lit, and a closet light was on.  When she awoke the candles were blown out and the lights were off.  Specialist AB awoke to appellant touching her, pulling her shorts down, and inserting his penis in her vulva.  At first, she thought it was her boyfriend, PFC Stanford.  However, after the sexual acts "felt different" and appellant "smelled like cigarette smoke," SPC AB turned around and saw appellant.  Appellant continued and pushed her head away and finally stopped after SPC AB yelled at him when she again turned around to see it was not PFC Stanford she was having sex with.  After the sexual assault, SPC AB was upset at both appellant and PFC Stanford.  She suspected PFC Stanford and appellant had some type of agreement for appellant to pretend he was her boyfriend in order to have sex with her.  Specialist AB denied having a motive to fabricate the allegations.

Appellant testified on the merits the sexual contact was consensual.  According to his testimony, when he entered the room, there were candles lit and there was light inside the room from the window and common area.  Specialist AB did not say anything but they made eye contact and started kissing.  Appellant testified the sexual intercourse just happened from his "vibes."  Appellant asserted SPC AB fabricated the sexual assault allegations to avoid non-judicial punishment for a pending Article 15, UCMJ, and to receive orders to be re-assigned out of Germany.  *See* DODI 6495.02, para. 4(o).

3

After trial, PFC Stanford signed a two-page, unsworn letter purporting to recant his testimony at trial. Private Stanford stated he lied when he testified at trial. He also now alleges the trial counsel assisted him in changing his testimony from his original statement to CID. He claims both the trial counsel and defense counsel ignored his opinion about SPC AB's credibility and motivation to fabricate the allegations. We will first address PFC Stanford's purported post-trial recantation.

## LAW AND DISCUSSION

### A. *Recantation of Witness at Trial*

Although not phrased as such by appellant, it appears appellant is seeking a petition for a new trial under Article 73, UCMJ, and Rule for Courts-Martial [hereinafter R.C.M.] 1210. *See United States v. Marcus*, ARMY 2013079, 2016 CCA LEXIS 96 (Army Ct. Crim. App. 19 Feb. 2016) (mem. op.), *pet. denied*, 75 M.J. 403 (C.A.A.F. 2016); *see also United States v. Cuento*, 60 M.J. 106, 112 (C.A.A.F. 2004) (petitions for new trial based on a witness's recantation should not be granted unless the court is "reasonably well satisfied that the testimony given by a material witness is false"). Article 73, UCMJ, allows an accused to petition for a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, also provides the mechanism for us to consider evidence outside the record and initially address appellant's claims. We believe our approach is consistent with the structure of the UCMJ and the nature of appellant's asserted error.

Regarding new evidence, R.C.M. 1210(f)(2) requires an appellant to support his or her petition with affidavits from witnesses who would testify at the new trial. R.C.M. 1210(c)(9). "Each such affidavit should set forth briefly the relevant facts within the *personal knowledge* of the witness". *Id.* (emphasis added); *see also United States v. Zaiss*, 42 M.J. 586, 593 n.2 (Army Ct. Crim. App. 1995) ("A signed statement is not the same as an affidavit."). Generally, to supplement the record with new substantive evidence requires the evidence to be either a sworn affidavit or a declaration made under penalty of perjury. *United States v. Axtell*, 72 M.J. 662, 665 (Army Ct. Crim. App. 2013). For petitions for a new trial, affidavits are required. R.C.M. 1210(c)(8) and (9). Recantations of trial testimony are viewed by federal courts with "extreme suspicion." *Cuento*, 60 M.J. 112; *see also United States v. Giambra*, 38 M.J. 240 (C.M.A. 1993). Petitions for a new trial should not be granted unless "the court is reasonably well satisfied that the testimony given by a material witness is false." *Giambra*, 38 M.J. at 241-42 (quoting *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928)).

Private Stanford's post-trial unsworn letter raises the issue of whether appellant is entitled to a new trial based on either new evidence or because prosecutorial misconduct led to a fraud upon the court. As an initial matter, PFC

Stanford's post-trial letter is not an affidavit and is unsworn. Since his statement is not a sworn affidavit or a declaration made under penalty of perjury this court will not consider the letter on appeal. *United States v. Cade*, 75 M.J. 923, 929 (Army Ct. Crim. App. 2016), *pet. denied* 76 M.J. 133 (C.A.A.F. 2017); *see also* R.C.M. 1210(c) (requiring an affidavit). However, even assuming we did consider the letter, the recantation is unlikely to produce a "substantially more favorable result for appellant." R.C.M. 1210(f)(2)C).

*1. Private First Class Stanford's Testimony Pretrial and at Trial*

Private Stanford testified for the defense at a pretrial motion hearing and testified for the government during the court-martial.

During the pretrial hearing, PFC Stanford testified he had a close relationship with SPC AB between August 2013 and November 2013. Private Stanford testified the day after the sexual assault, he spoke to SPC AB, and she did not seem upset or emotionally disturbed by what happened the night before. Private Stanford did not see SPC AB in-person on 12 September 2013, and SPC AB never stated she wanted to leave Germany nor did she complain about her unit leadership.

At trial, PFC Stanford testified he and appellant were in the same battalion, lived in the same barracks, and were friends. According to PFC Stanford, on 11 September 2013, SPC AB came to his room. Since they had been arguing, PFC Stanford left the room and went to see appellant. When he left SPC AB in his room, she appeared to be asleep and the lights were off. Private Stanford told appellant SPC AB was sleeping in his room. Appellant stated he was hungry and took PFC Stanford's room key to get something to eat. Appellant was only gone for "like five minutes." Appellant did not say anything and returned the room key. Private Stanford got a text from another soldier that SPC AB was running down the barracks stairs and crying. Private Stanford then spoke on the phone with SPC AB, who "didn't sound like herself" and stated, "I don't know what kind of games you and your friends play, but we'll going to see who get [sic] the last laugh." Later that evening, PFC Stanford met SPC AB, who told PFC Stanford she was asleep in the room and appellant inserted his penis into her. She stated she thought appellant was PFC Stanford. A few days later, PFC Stanford spoke to appellant, who stated the sexual intercourse was consensual.

During cross-examination by appellant's defense counsel, PFC Stanford testified that contrary to SPC AB's testimony, they did not watch television and the television was not on when he left. He also testified the outside light coming through the window was enough to be able to see someone in the room. Private Stanford left two candles burning when he left the room, and SPC AB told him she was able to see appellant right before he inserted his penis inside her. According to PFC Stanford, SPC AB chose to initially file a restricted report to not get PFC

Stanford in trouble because the incident happened in his room. When he spoke to SPC AB the next day, she was no longer angry with PFC Stanford and said she "would handle it." Private Stanford testified he smoked cigarettes back in September 2013 and denied initially telling SPC AB and another soldier he did not know how appellant got into his barracks room. Private Stanford had contact with appellant every day and gave an opinion that he thought appellant was peaceful and respected women.

### 2. Post-Trial "Recantation"

In his unsworn letter on appeal, PFC Stanford recants his trial testimony and writes "what most of the witnesses and I said wasn't true." Private Stanford's unsworn letter claims the "trial counsel basically helped me re-write my sworn statement." Private Stanford states he lied to avoid prosecution and also states he tried to explain information to appellant's defense counsel. However, appellant's defense counsel "continued to let the truth go unheard" since "they wanted a conviction" or for appellant to plead guilty.

Now, PFC Stanford claims SPC AB was angry at him for not agreeing to marry her. Private Stanford states he was afraid SPC AB would accuse him of sexual assault and does not think SPC AB's allegations were true. He tried to explain to the trial counsel SPC AB's motivation to fabricate the allegations. According to PFC Stanford, SPC AB was trying to avoid being separated from the Army for misconduct and desired to leave Germany. However, he was allegedly "shut down" by the trial counsel when he tried to explain why SPC AB would make a "ridiculous claim" of sexual assault. Private Stanford states he left candles burning and a closet light on when he left the room and claims he did not watch television with SPC AB or leave the television on when he left. When PFC Stanford initially saw appellant that evening, appellant mentioned he was hungry and asked why PFC Stanford was in another soldier's barracks room.

According to his post-trial unsworn letter, PFC Stanford told appellant that SPC AB came over to his room for an intimate evening, but they got into an argument, and he was "not interested in her anymore." Therefore, he left his room and she remained. Private Stanford stated SPC AB "showed interest" and "flirted with us all." After telling appellant this information, appellant asked if he could go to the room "to check on her" and "see what she wanted." Private Stanford gave appellant the key to his room. Appellant returned a short-time later, and said he and SPC AB had consensual sex.

### 3. Review of Post-Trial Recantation

When comparing PFC Stanford's testimony at trial and his post-trial unsworn let, there are areas that are generally consistent. In both, PFC Stanford explains why

SPC AB was in his room alone and how appellant gained entry to the barracks room. In both, PFC Stanford stated he left candles lit and did not leave a television on when he left the room. Although he now states he also left a closet light on, PFC Stanford testified that in any case, there was enough light to see inside the room. Private Stanford also confirms appellant was only in his room for a short time, although now he claims fifteen minutes, and SPC AB was upset and angry afterward. Specialist AB told PFC Stanford she thought appellant was PFC Stanford. Specialist AB was angry since she suspected PFC Stanford and appellant had some type of agreement for appellant to pretend he was her boyfriend in order to have sex with her. He also confirms appellant admitted he stuck his penis into SPC AB.

At points, the differences between PFC Stanford's trial testimony and post-trial letter could be explained by an evolving sense or understanding of events from that evening and his discussion with appellant and SPC AB afterward. At other points, however, there are major differences. First, PFC Stanford now contends the government trial counsel helped him "re-write his sworn statement" before he testified at trial.[3] However, PFC Stanford's trial testimony was consistent with his sworn statement to CID and at the preliminary hearing prior to trial.[4] Similarly, PFC Stanford alleges defense counsel did not want to listen to "the truth" and were more interested in a conviction or a guilty plea. This assertion is completely unsupported by the record. Throughout the entire trial, defense counsel zealously represented appellant. For example, after PFC Stanford's eight-page direct testimony, defense

---

[3] It is clear from the context of PFC Stanford's post-trial letter he is referring to his testimony at trial instead of his actual sworn statement to CID. On 24 October 2013, PFC Stanford made a detailed two-page sworn statement to CID and it was video recorded. In the sworn statement, PFC Stanford provided a half-page narrative of what he observed on 11 September 2013 and his discussions with SPC AB and appellant. The remainder of the statement included PFC Stanford's answer to follow-up questions by the CID special agent.

[4] Private Stanford's statement to CID was not admitted as an exhibit at trial and was not considered by the court. We do not and did not give any weight to the allied documents outside the record of trial to determine the factual or legal sufficiency of an appellant's plea of guilty. *United States v. Cade*, 75 M.J. 923, 928 (Army Ct. Crim. App. 2016) (record of trial does not normally include allied documents). However, our interpretation here is consistent with the pretrial investigation contained in the allied documents. At the preliminary hearing, PFC Stanford also testified consistent with his initial statement to the CID special agent, who did not question him about the room lighting. At the preliminary hearing, PFC Stanford provided sworn testimony he left candles lit and there was no television on when he left the room. Private Stanford provided additional testimony favorable to appellant when he testified SPC AB "seemed normal" the next day.

counsel conducted a forty-nine-page cross-examination. During the vigorous cross-examination of PFC Stanford, defense counsel were effective in attempting to minimize PFC Stanford's testimony, in discrediting SPC AB's testimony, and in bolstering appellant's testimony. Similarly, defense counsel conducted a vigorous cross-examination of the other government witnesses to include SPC AB.

Second, in seeking to discredit SPC AB in his post-trial letter, PFC Stanford provides insights into his discussions with appellant that evening before the sexual assault. In the CID statement and at trial, PFC Stanford swore he gave appellant the key to his barracks room only because appellant was hungry and wanted to find something to eat. Contrary to this testimony at trial, PFC Stanford now asserts appellant went to the room to specifically to check on SPC AB and "see what she wanted to talk about." This "check-in" was right after PFC Stanford told appellant she allegedly "showed interest" and "flirted with" other soldiers in the unit to include appellant. Private Stanford's post-trial letter appears to support SPC AB's intuition concerning PFC Stanford and appellant's discussions about appellant going to the barracks room for something other than merely getting some food.[5] In this respect, PFC Stanford's post-trial statement is inculpatory in that it would have been some evidence appellant went to the room for sex.

We are not required, however, to resolve these matters decisively. Our role is to "merely decide[] if the evidence is sufficiently believable to make a more favorable result probable." *Brooks*, 49 M.J. at 69. As discussed above, his post-trial unsworn letter that claims he was forced to materially alter his testimony from his original statement to CID is completely at odds with his actual sworn trial testimony. His broad claim he lied during trial and was not allowed to testify truthfully about the sexual assault is contradicted by his detailed testimony at both

---

[5] This court offers no opinion on whether or not PFC Stanford was more culpable in the sexual assault than he originally admitted to CID. However, his statements about his friendship with appellant and their discussions immediately prior to sexual assault makes this court view his letter with some suspicion. According to PFC Stanford's post-trial unsworn letter, he told appellant SPC AB's reason for coming to PFC Stanford's room was for PFC Stanford and SPC AB to spend an intimate evening together. Private Stanford explained his lack of interest in SPC AB after they argued, discussed her alleged interest in appellant, and explained SPC AB was asleep in the room, prior to giving him the key to his barrack's room. "[P]ost-trial attempts by co-actors to exonerate one or the other should be viewed with extreme suspicion. . . . Petitions for new trial should be denied where post-trial attempts to exculpate the petitioner appear 'contrived.' In these situations, such attempts should simply be deemed unworthy of belief and rejected." *United States v. Brooks*, 49 M.J. 64, 68-9 (C.A.A.F. 1998) (quoting *United States v. Bacon*, 12 M.J. 489 (C.M.A. 1982).

the Mil. R. Evid. 412 hearing and at the trial on the merits. We find that most of PFC Stanford's post-trial letter does not present materially new evidence or was already addressed at appellant's trial. Other portions of his letter lack the credibility to warrant any change in the court-martial findings.

### 4. *Probability of More Favorable Result*

Portions of PFC Stanford's letter include information that was already addressed and excluded by the military judge in a Mil. R. Evid. 412 hearing. Specialist AB's alleged motivation to fabricate the allegations in order to avoid discipline and be re-stationed outside of Germany is not new information. These motives to fabricate were presented to the military judge by appellant's defense counsel at trial. The issue about lighting in the barrack's room and ability for SPC AB to see appellant was fully litigated at trial. His assertion now that he left his closet light on actually bolsters SPC AB's testimony, since she also testified the closet light was on when he left the room. Specialist AB's demeanor after the sexual assault was fully litigated at trial. Private Stanford testified at the Mil. R. Evid. 412 hearing and at trial that he did not think SPC AB was upset or angry after he explained he was not involved in the sexual assault. On both the issue of lighting and demeanor, PFC Stanford provided testimony at trial that both the government and defense argued was favorable to their theory of the case.

Finally, even if we were to find the recantations of PFC Stanford were new evidence, the importance—or lack thereof—of his testimony must be considered within the scope of the entire trial. Contrary to his assertion that he was a "star witnessed [sic]" at trial, PFC Stanford was not a material witness on the charged offenses. Private Stanford was one of eleven merit witnesses that testified at trial. The post-trial statement does not allege SPC AB has recanted or made any statements to PFC Stanford that the sexual acts with appellant were consensual. Private Stanford merely speculates appellant is telling the truth (which would be impermissible 'human lie detector' testimony), SPC AB is not credible, and SPC AB should have been more emotionally impacted by the crime. Only appellant and SPC AB were in the barracks room when the sexual assault occurred. While PFC Stanford's testimony is not inconsequential, the government's direct examination amounted to eight pages of a 757-page record. In other words, PFC Stanford's recantation is unlikely to produce a "substantially more favorable result" for appellant. R.C.M. 1210(f)(2)(C).

### B. *Dilatory Post-Trial Delay*

The convening authority took action 202 days after the conclusion of appellant's court-martial. Of that delay, twenty days were attributable to the defense, and 182 days were attributable to the government. The record consists of five volumes, and the trial transcript is 757 pages. Since the addendum to the Staff

Judge Advocate Post-Trial Recommendation (SJAR) included a discussion about appellant's alleged errors raised in his R.C.M. 1105/1106 matters, the addendum was served on appellant and his counsel. Thirteen days later, appellant submitted additional maters to the CA. The staff judge advocate (SJA) included a summary explaining the post-trial processing in this case. We do not find a due process violation or unreasonable post-trial delay by the CA.

After the CA completed initial action, the record of trial was mailed to this court and received on 5 October 2015. On 8 October 2015, the court delivered the record of trial to Defense Appellate Division (DAD). However, based on a clerical error by our court, it took ninety-one days to serve the referral and designation of counsel transmittal letter to DAD, which is located in the same building on Fort Belvoir as this court. Based on our error, we provided DAD an enlargement of time to review the record of trial. Under the *Moreno* standard for appellate review, the court has eighteen months to complete appellate review and issue a decision. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).

Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000). While appellant's sentence was appropriate at the time it was adjudged, we must consider the appropriateness in light of appellate delay and what "should be approved." UCMJ art. 66(c). This court has found convening authorities dilatory in post-trial processing when it has taken months to mail a completed record of trial to this court. We should likewise be equally critical and consider when this court is responsible for ninety-one days of unreasonable post-trial delay in delivering a referral letter within the same building. Thus, we find relief is appropriate under the facts of this case.

### CONCLUSION

Upon consideration of the entire record, the findings of guilty are AFFIRMED. Given the dilatory post-trial processing by this court, however, we affirm only so much of the sentence as provides for a dishonorable discharge and confinement for eight years and eleven months. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court